IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WARD STURGIS WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-1612-L-BN |
| | § | |
| JOHNSON COUNTY, TEXAS, AUSTIN | § | |
| REED, and THOMAS GROSS, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Ward Sturgis Williams, through counsel, brings this civil rights action against Defendants Officer Austin Reed and Sergeant Thomas Gross, City of Alvarado, Texas police officers, based on Williams's arrest on July 12, 2019, and against Defendant Johnson County, Texas, based on his subsequent detention. *See* Dkt. No. 3.

United States District Judge Sam A. Lindsay referred Williams's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 18.

Reed and Gross filed a motion to dismiss based on qualified immunity. *See* Dkt. No. 12. The Court converted their motion to dismiss to one for summary judgment, *see* FED. R. CIV. P. 12(d); *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016), to allow the Court to consider their actions separately, *see* *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007), on an expedited basis, *see* *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam), and ordered

Williams to either file a motion for leave to conduct limited discovery in order to respond to the qualified immunity issues raised in the summary judgment motion or advise the Court that he does not need to conduct such discovery to respond, *see* Dkt. No. 19. Williams notified the Court that discovery is not needed and then responded to the motion for summary judgment. *See* Dkt. Nos. 22, 27. And Reed and Gross replied. *See* Dkt. No. 33.

Johnson County also moved to dismiss the complaint. *See* Dkt. No. 20. Williams responded. *See* Dkt. No. 26. And the County replied. *See* Dkt. No. 36.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment on qualified immunity, dismissing the claims against the individual officers with prejudice, and the County's motion to dismiss but should allow Williams leave to file an amended complaint against the County insofar as he can allege municipal liability.

**Discussion**

I.    **The Court should grant the County's motion to dismiss without prejudice to Williams's ability to file an amended complaint to the extent that he can assert facts to plausibly show that a municipal policy was the moving force behind the alleged constitutional violations.**

Williams alleges that Johnson County violated his rights under the Fourth and Fourteenth Amendments (and its Substantive Due Process Clause) "by refusing [his] arraignment and access to communication with family or an attorney until [he] answered the booking questions" and by "plac[ing him] naked in a refrigerated suicide cell for about 20 hours until he simply couldn't take it any more as a coercive punishment designed specifically to reduce his physical capacity to the point that he

was under the physical necessity of agreeing to answer the booking questions, and for that matter to comply with any other instruction from Johnson County's correctional employees." Dkt. No. 1, Claims 4, 5, 6 (¶¶ 112-140).

The County moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for Williams's failure to state a claim, arguing that Williams has failed to allege a constitutional claim against the County and, more specifically, that he has failed to allege a claim for failure to train. *See* Dkt. No. 20. Through his response, which focuses on the temperature/suicide cell claim, Williams asserts that he intends to amend his complaint "to more clearly allege" this claim. Dkt. No. 26.

### A.    Legal Standards

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555; *see also Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477,

482 (5th Cir. 2021) ("There is no heightened pleading standard for § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).[1]

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

---

[1] *Cf. Sewell*, 974 F.3d at 582 ("Although this framework is one-sided, the issue 'is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims.' The other side will have its say later." (quoting *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *vacated on other grounds*, 113 F.3d 1412 (5th Cir. 1997))).

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Instead, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.2d at 899 ("Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

### B.    Analysis

"A person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson*, 994 F.3d at 482 (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that

a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

So, "[i]n municipal-liability cases," the threshold question "is whether the complained-of 'act may fairly be said to represent official policy.'" *Id.* at 792-93 (cleaned up; quoting *Monell*, 436 U.S. at 694); *see also Hutcheson*, 994 F.3d at 483 (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation).

> And a plaintiff may proceed on a *Monell* claim only by
>
> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

As against Johnson County, Williams alleges that conditions at its jail – specifically, his confinement in a frigid suicide cell for some 20 hours to coerce him to answer booking questions – violated the Constitution and that this alleged constitutional violation, which Williams asserts was not isolated to him, represents an official policy of the County. *See, e.g.*, Dkt. No. 1, ¶ 10.

"A 'condition of confinement' case is a constitutional attack on 'general

- 6 -

conditions, practices, rules, or restrictions of pretrial confinement'" that "'amount to punishment of the detainee.'" *Estate of Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 308 (5th Cir. 2020) (quoting *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997), then *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019)). And "a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs," as "any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 454 (5th Cir. 2009).

"[P]roving 'a pattern is a heavy burden, one that has rarely been met in [this circuit's] caselaw.'" *Bonilla*, 982 F.3d at 309 (quoting *Shepherd*, 591 F.3d at 452). This is because "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Id.* (quoting *Montano v. Orange Cnty.*, 842 F.3d 865, 879 (5th Cir. 2016)). Instead, a plaintiff must "show that the pattern or practice 'was the moving force behind the violation.'" *Id.* (quoting *Sanchez*, 956 F.3d at 791). Only then may "the court 'assume, by the municipality's promulgation and maintenance of the complained of condition, that it intended to cause the alleged constitutional deprivation.'" *Id.* (modified; quoting *Flores*, 124 F.3d at 738); *see also Sanchez*, 956 F.3d at 793 ("Practices that are 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct,' can represent official policy. This is because pervasive practices can be evidence that the official policymaker knew of and acquiesced to the misconduct, making the municipality culpable." (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645

(5th Cir. 1996) (en banc), then citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578

(5th Cir. 2001))).

> Williams summarizes his conditions claims against the County as that,
>
> [f]ollowing his arrest, [he] was transported to the Johnson County Jail, where [he] refused to answer booking questions. In order to coerce [him] to answer the questions, he was forced to strip naked and was placed in a solitary suicide cell that was kept chilled at only about 50 [degrees Fahrenheit]. After about 20 hours, [he] began to fear sufficiently for his health that he finally agreed to answer the booking questions. During this time Williams was also informed by correctional employees that he would not be allowed to contact family or an attorney until he answered the booking questions, and by a magistrate that he would not be arraigned until he answered the booking questions.

Dkt. No. 1, ¶ 10. He further alleges that,

> [i]n all, more than a dozen county employees at the Jail – including police sergeants, police lieutenants, a police captain, a paramedic, and a judicial magistrate – all witnessed [his] being threatened with this confinement, being told that this confinement was standard county policy, and/or being subjected to this confinement. None acted surprised, many told [him] that this was the standard county policy, and none intervened to alleviate this treatment.

*Id.*; *see also, e.g., id.*, ¶ 67 ("The Johnson County correctional employees also informed

Williams that they would compel him to answer the booking questions by placing him

naked in a refrigerated and solitary suicide cell until he agreed to answer the booking

questions. These employees explicitly stated that it was the county's policy to treat

any suspect who refused to answer the booking questions as suicidal until the suspect

agreed to answer."); *id.*, ¶¶ 80, 81 (Williams's confinement to the refrigerated solitary

suicide cell was pursuant to a policy or custom of Johnson County. Williams was told

that this was standard county policy soon after his arrival at the jail in the presence

of about six county correctional employees. Those who walked by during Williams's

discussions of this policy included police sergeants, lieutenants, and a captain. Moreover, Williams remained in the cell for about 20 hours from about 4:00 p.m. on Friday afternoon until about noon on Saturday, during which time correctional employees from about three different shifts were made clearly aware of Williams's circumstances as they frequently checked on him, and as he repeatedly complained to them regarding both his treatment and the reason for that treatment. At no point did anyone suggest either that the policy was improper or that the policy did not exist. Even the magistrate who visited Williams on Saturday morning and the paramedic, when informed by Williams of these facts, did not act in the least bit surprised or as though the circumstances of Williams's treatment were at all unusual. The treatment that Williams received at the hands of a large portion of the employees at the Johnson County Jail – including several supervisory employees and even a magistrate – was not the result of a few employees violating county policy out in the field away from supervision."); *id.*, ¶ 120 ("Defendant Johnson County is liable for the conduct of its employees because the treatment that Williams received at the hands of a large portion of the employees at the Johnson County Jail was not merely the result of a few employees violating county policy out in the field away from supervision.").

But, as to *Monell*'s policymaker prong, Williams fails to allege facts from which the Court may infer that Johnson County's sheriff was aware of his treatment at the jail and thus "plead facts that sufficiently connect the policymaker to the allegedly unconstitutional policy." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (cleaned up; "Because the 'specific

identity of the policymaker is a legal question that need not be pled,' plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [their] injury or delegated to a subordinate officer the authority to adopt such a policy. In other words, plaintiffs must plead facts that sufficiently connect the policymaker ... to the allegedly unconstitutional policy." (citing *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284, 286 (5th Cir. 2016))).

"Under Texas law, sheriffs are 'final policymakers' in the area of law enforcement for the purposes of holding a county liable under § 1983." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (citing *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 (5th Cir. 2003)). And "[t]here is a fundamental difference between decision makers and policymakers," such that "'[d]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function.'" *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 246 (5th Cir. 2021) (per curiam) (quoting *Bolton v. City of Dall.*, 541 F.3d 545, 548-49 (5th Cir. 2008)).

So Williams's allegation that "several supervisory employees and even a magistrate" at the jail or that "sergeants, lieutenants, and a captain" at the jail were aware of the policy that he was subjected to, Dkt. No. 1, ¶¶ 80, 81, even accepted as true, does not assert that a policymaker – and thus the municipality – was aware of this policy, *see, e.g.*, *Roe v. Johnson Cnty., Tex.*, No. 3:18-cv-2497-B-BN, 2021 WL 4395280, at *18 (N.D. Tex. July 13, 2021) ("Plaintiff has not plausibly alleged that [the jail administrator] was a policymaker – one who took the place of the sheriff and

thus did not answer to the sheriff with respect to the operation of the jail – such that the municipality itself may be held liable for [the jail administrator's] alleged actions." (citing *Hughes v. City of Dall., Tex.*, No. 3:18-cv-1770-B, 2020 WL 4670659, at *4 (N.D. Tex. Aug. 11, 2020))), *rec. accepted*, 2021 WL 3828151 (N.D. Tex. Aug. 27, 2021).

Nor has Williams alleged facts from which the Court may infer that Johnson County's sheriff ratified the misconduct that Williams alleges. *See, e.g.*, *Sanchez*, 956 F.3d at 793 ("When the official policymaker knows about misconduct yet allegedly fails to take remedial action, this inaction arguably shows acquiescence to the misconduct such that a jury could conclude that it represents official policy." (citing *Duvall v. Dall. Cnty., Tex.*, 631 F.3d 203, 208-09 (5th Cir. 2011); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985); *Piotrowski*, 237 F.3d at 578 n.18)).

But, while Williams also fails to allege other instances where detainees were subject to what he contends is an unconstitutional de facto policy of the County, Williams does respond to the motion to dismiss that he can cure deficiencies in his original allegations, including by alleging "that other individuals have been subjected to the same frigid suicide cell under similar conditions … as recently as last December 2020, Ronnie Brooks, although there are also others." Dkt. No. 26 at 9.

In addition, the United States Court of Appeals for the Fifth Circuit has held that "a de facto policy can be established through … consistent jailer testimony." *Sanchez*, 956 F.3d at 794; *see also Montano*, 842 F.3d at 876 ("The county emphasizes … that plaintiffs did not provide specific examples of other instances of detainees who

suffered Mr. Montano's fate as a result of the *de facto* policy. But, as also noted, such specific examples are not required to meet the "condition or practice" element. In that regard, although 'isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate,' the evidence was sufficient for a reasonable juror to infer a *de facto* policy that every seemingly detoxifying detainee was left in the bubble without emergency medical care. Given the striking uniformity of the jail employees' testimony, further evidence was not required for a reasonable juror to infer a *de facto* policy for conditions or practices." (citation omitted)). And Williams's initial allegations, including those set out above, raise the possibility that he may be able to plausibly allege a pervasive practice amounting to a de facto policy through consistent jailer testimony.

In sum, the undersigned finds that Williams's original complaint does not allege a plausible constitutional claim against the County. But, considering his allegations and the parties' briefing and that Federal Rule of Civil Procedure 15 "*requires* courts 'freely give leave [to amend] when justice so requires,'" *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (quoting FED. R. CIV. P. 15(a)(2)), the Court should dismiss the claims against the County without prejudice to Williams's ability to file an amended complaint, *see Farias v. Bexar Cnty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 874 (5th Cir. 1991) ("Rule 15 encourages leave to amend. '[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982))).

**II.    The Court should grant Reed and Gross qualified immunity on summary judgment and dismiss the claims against them with prejudice.**

Williams alleges that, prior to his detention at the Johnson County jail – and independent of his claims based on that detention – two City of Alvarado, Texas police officers (Officer Reed and Sergeant Gross) detained him without reasonable suspicion and arrested him without probable cause and while using excessive force, all in violation of the Fourth Amendment. Both Reed and Gross allege an entitlement to qualified immunity on – and therefore request dismissal of – these claims.

As explained below, Williams, as the party asserting an injury, may only defeat summary judgment on qualified immunity by showing that the facts supported by evidence and viewed in the light most favorable to him show a constitutional violation. So, as background, the following facts are mainly drawn from his affidavit. *See* Dkt. No. 28 at 63-66.

Williams purchased a mobile home from Jason Cornett and his wife, and, after a protracted effort to get possession of it, Williams obtained a writ of possession for the mobile home on July 12, 2019 and was informed that the writ would be executed the next morning and that there would be a limited window of time to move the home in the presence of a constable. So, on the afternoon of July 12, Williams traveled to the mobile home to ensure that the tongue for moving it was still attached and then remained in his car and was present when Cornett arrived home with his friend Cory Watson.

Watson told Williams to leave and, according to Williams, then damaged Williams's vehicle "by banging on the side mirror." Williams exited the vehicle and

told Watson "to get back," and Watson crossed the street, returning to the yard in front of the mobile home. 911 was called. The caller informed 911 that Williams drew a knife. Reed and Gross then arrived on the scene.

For the reasons explained below, the record before the Court fails to show that either Reed or Gross violated Williams's constitutional rights. And, even if the record did show such a violation, Williams has failed to carry his separate burden to show that either Reed or Gross violated a federal right that was clearly established. The Court should therefore grant Reed and Gross qualified immunity on summary judgment and dismiss the claims against them with prejudice.

### A.    Legal Standards

"A plaintiff makes out a § 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"But government officials performing discretionary duties" can respond to such a claim by asserting qualified immunity. *Id.* at 294 (citing *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013)).

If they do, a court must consider each official's actions separately, *see Meadours*, 483 F.3d at 421-22, on an expedited basis, *see Ramirez*, 3 F.4th at 133 ("Because qualified immunity is an *immunity from suit*, not merely a defense to liability, 'it is effectively lost if a case is erroneously permitted to go to trial.' It is for this reason that a denial of qualified immunity is immediately appealable and that a defendant's entitlement to qualified immunity should be determined at the earliest

possible stage of the litigation. This scheme prevents a defendant entitled to immunity from being compelled to bear the costs of discovery and other pre-trial burdens." (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); citations omitted)).[2]

> [T]he doctrine of qualified immunity attempts to balance two competing societal interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." These interests are distilled into a legal standard, an affirmative defense, that shields public officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

*Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), then *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Phrased differently, this immunity "attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)).

The doctrine therefore "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); internal quotation

---

[2] *See also Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) ("[B]ecause qualified immunity is 'not simply immunity from monetary liability' but also 'immunity from having to stand trial,' there is an interest in qualified immunity entering a lawsuit 'at the earliest possible stage of litigation.'" (quoting *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting, in turn, *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)))).

marks omitted); *accord City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015). "'Accordingly, "qualified immunity represents the norm," and courts should deny a defendant immunity only in rare circumstances.'" *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) (quoting *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting, in turn, *Harlow*, 457 U.S. at 807)); *but see, e.g., Jamison v. McClendon*, 476 F. Supp. 3d 386 (S.D. Miss. 2020) (calling for reconsideration of the doctrine); *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., statement respecting denial of cert.) (calling on his colleagues to, "in an appropriate case" "reconsider either our one-size-fits-all test or the judicial doctrine of qualified immunity more generally").

The "qualified-immunity inquiry is two-pronged." *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (citing *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

- Do "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right"? *Id.* at 190-91 (citing *Garcia*, 957 F.3d at 600)

- Was "the right at issue [] 'clearly established' at the time of the alleged misconduct"? *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (cleaned up; quoting *Pearson*, 555 U.S. at 232).

"In order for a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ramirez*, 3 F.4th at 133 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The reasonableness of the official's conduct and the degree to which the particular right in question was clearly established are thus merged into one issue for purposes of the qualified immunity analysis." *Id.* at 133-34; *cf. Nerio v. Evans*, 974

F.3d 571, 575 (5th Cir. 2020) ("Fair notice requires clearly established law. That is, the law must 'clearly prohibit the officer's conduct in the particular circumstances before him' so 'every reasonable official' knows not to engage in that conduct." (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018); citing *al-Kidd*, 563 U.S. at 742)).

Under this standard, "'[q]ualified immunity is justified unless no reasonable officer could have acted as [the defendant officers] did here, or every reasonable officer faced with the same facts would not have [acted as the defendant officers did].'" *Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (quoting *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019) (citing, in turn, *Wesby*, 138 S. Ct. at 590 ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know."))).

A court may "'analyze the prongs in either order or resolve the case on a single prong.'" *Cunningham*, 983 F.3d at 191 (quoting *Garcia*, 957 F.3d at 600). But addressing this affirmative defense on a motion for summary judgment is not exactly intuitive.

"A plaintiff suing for a constitutional violation has the ultimate burden to show that the defendant violated a constitutional right … whether or not qualified immunity is involved." *Joseph*, 981 F.3d at 329 (footnote omitted).

But, "[w]hen a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to

the plaintiff to show that the defense is not available.'" *Id.* at 329-30 (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)); *accord Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021) ("The defense of qualified immunity 'alters the usual summary judgment burden of proof.' Once a defendant properly raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense's protection." (citations omitted)). "In other words, to shift the burden to the plaintiff, the public official need not show (as other summary-judgment movants must) an absence of genuine disputes of material fact and entitlement to judgment as a matter of law." *Joseph*, 981 F.3d at 330 (citing *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016)).

Once shifted, "the plaintiff bears the burden of demonstrating that a defendant is not entitled to qualified immunity." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (per curiam) (citation omitted). And, "[t]o rebut [a public official's] qualified immunity defense, a plaintiff must point to summary judgment evidence '(1) that [the official] violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (cleaned up).

As to the first prong of the qualified-immunity inquiry, to overcome a public official's motion for summary judgment on qualified immunity, the plaintiff "must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury" – just as would be required "if the plaintiff did not face qualified immunity." *Joseph*, 981 F.3d at 330.

That is, the plaintiff must defeat summary judgment by showing that "the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right," *Cunningham*, 983 F.3d at 190-91.

When considering this showing, the Court must "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the Court need not do so if the plaintiff's "version 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Joseph*, 981 F.3d at 325 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); citing *Orr*, 844 F.3d at 590).

When accepting the plaintiff's well-supported version of the disputed facts, the Court must "view the facts and draw reasonable inferences in the light most favorable to" the plaintiff. *Id.* (footnote omitted). And, particularly applicable in *pro se* cases, "verified complaint[s] and other verified pleadings serve as competent summary judgment evidence." *Falon v. Holly*, 480 F. App'x 325, 326 (5th Cir. 2012) (per curiam) (citing *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003)); *see, e.g.*, *Mitchell v. Cervantes*, 453 F. App'x 475, 477-78 (5th Cir. 2011) (per curiam).

But "the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. So, "when qualified immunity is involved, at least in this circuit, a plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (footnote omitted).

And "[t]he 'clearly established' prong is difficult to satisfy." *Cunningham*, 983

F.3d at 191; *see also Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) ("We are bound by the restrictive analysis of 'clearly established' set forth in numerous [United States] Supreme Court precedents.").

The plaintiff "must show that the law was 'sufficiently clear' at that time 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Batyukova*, 994 F.3d at 726 (quoting *Mullenix*, 577 U.S. at 11). And "[t]here are two ways to demonstrate clearly established law" and meet this additional burden to make this second showing. *Id.*

The first approach "requires the plaintiff to 'identify a case' – usually, a 'body of relevant case law' – in which 'an officer acting under similar circumstances ... was held to have violated the [Constitution]," *Joseph*, 981 F.3d at at 330 (footnote omitted); *accord Wigginton v. Jones*, 964 F.3d 329, 335 (5th Cir. 2020) (A clearly established right must be supported by "'controlling authority – or a "robust consensus of [cases of] persuasive authority" – that defines the contours of the right in question with a high degree of particularity.'" (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011))); *see also Lincoln v. Turner*, 874 F.3d 833, 850 (5th Cir. 2017) ("While we may look to other circuits to find clearly established law, we must consider 'the overall weight' of such authority. A 'trend' alone is just that. As of December 2013, only two circuits had weighed in on the 'contours of the right.' These cases alone do not provide sufficient authority to find that the law was clearly established." (footnote omitted)).

"It is the plaintiff's burden to find a case in [her] favor that does not define the

law at a 'high level of generality.'" *Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (cleaned up; quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting, in turn, *Cass v. City of Abilene*, 814 F.3d 721, 733 (5th Cir. 2016))). Thus, the "clearly established law" "must be 'particularized' to the facts of the case." *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021) (cleaned up; quoting *White*, 137 S. Ct. at 552 (quoting, in turn, *al–Kidd*, 563 U.S. at 742)). And a clearly established right must be defined "'with specificity.'" *Cunningham*, 983 F.3d at 191 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam)).

"This rule is a 'demanding standard.'" *Id.* (quoting *Wesby*, 138 S. Ct. at 589). And "'[a]bstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.'" *Nerio*, 974 F.3d at 575 (quoting *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)).

"While there need not be 'a case directly on point,' the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph*, 981 F.3d at 330 (footnotes omitted); *accord Tucker*, 998 F.3d at 173-74 ("For conduct to be objectively unreasonable in light of clearly established law, there need not be a case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted); citing *Mullenix*, 577 U.S. at 14)).

"The central concept is that of 'fair warning': The law can be clearly established

'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (quoting, in turn, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc))).

"In other words, 'there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful.'" *Cunningham*, 983 F.3d at 191 (quoting *Vincent*, 805 F.3d at 547).

Under the second approach to demonstrating clearly established law, a plaintiff asks the Court to look to "the 'rare' possibility that, in an 'obvious case,' analogous case law 'is not needed' because 'the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances.'" *Joseph*, 981 F.3d at 330 (quoting *Wesby*, 138 S. Ct. at 590); *accord Batyukova*, 994 F.3d at 726; *Villareal v. City of Laredo, Tex.*, 17 F.4th 532, 539-40 (5th Cir. 2021).

"[I]n an obvious case, general standards can [therefore] 'clearly establish' the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up; quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). But "[t]he standard for obviousness is sky high." *Joseph*, 981 F.3d at 338. And "plaintiffs are only excused of their obligation to identify an analogous case in 'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206 (quoting *Taylor v. Riojas*,

141 S. Ct. 52, 53-54 (2020) (per curiam)); *see also Villareal*, 17 F.4th at 540 ("The point is this: The doctrine of qualified immunity does not always require the plaintiff to cite binding case law involving identical facts. An official who commits a patently 'obvious' violation of the Constitution is not entitled to qualified immunity." (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002))).

### B.    Analysis

On top of this legal framework, there is another, significant consideration. Reed's body camera captured the officers' interactions with Williams, from their arrival to Reed's transporting Williams to jail. *See* Dkt. Nos. 13, 17. So, while a court generally "must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor," *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citation omitted), the Court must here "assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene," *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing, in turn, *Scott*, 550 U.S. 372)).

In sum, "[w]hen one party's description of the facts is discredited by the record, [a court] need not take his word for it but should view 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott*, 550 U.S. at 380-81). *Accord Joseph*, 981 F.3d at 325 (Where a court "proceed[s] through the facts in detail, including the disputed facts, considering each officer's actions independently," it "draw[s] these facts from

the record, prioritizing the video evidence." (footnotes omitted)).[3]

Videos of an officer's interactions with a Section 1983 plaintiff typically implicate claims of excessive force. And, while the Court should consider Reed's body camera recording to resolve qualified immunity as to Williams's excessive force claim, it should also consider that recording while addressing his evidence as to whether there existed reasonable suspicion and probable cause. *See, e.g.*, *Kost v. Cotto*, 458 F. Supp. 3d 571, 583-84 (W.D. Tex. 2020) ("In analyzing whether Cotto's actions were objectively reasonable for the purposes of summary judgment, the Court first summarizes the law applicable to the scope and duration of traffic stops and weapons frisks, the development of reasonable suspicion in general, and the role a person's perceived nervousness may play in an officer's development of reasonable suspicion about him. Then, the Court evaluates Cotto's prolonging the traffic stop and frisking Kost in light of this law, viewing the evidence as depicted by the body camera recording and in the light most favorable to Kost as the nonmoving party."); *see also Bender v. City of Rialto*, No. 5:20-cv-02171-JWH-SPx, 2022 WL 881301, at *6 (C.D. Cal. Mar. 16, 2022) ("[T]he holding in *Scott* cuts both ways. Not only can it contradict a plaintiff's version of events, but it can contradict a defendant's version as well." (footnote omitted)).

---

[3] *Cf. Kokesh v. Curlee*, 15 F.4th 382, 385 n.2 (5th Cir. 2021) ("Although all alleged facts are taken as if they are true, facts established by a video record control when they clearly contradict the facts contained in a pleading." (citing *Scott*, 550 U.S. at 380-81; *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004))).

> 1. The facts from the record giving priority to the video evidence reflect that there was reasonable suspicion to <u>detain Williams and probable cause to arrest him</u>.

"A seizure must be 'justified at its inception.'" *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (quoting *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004)). Indeed, the Constitution "contemplates searches and seizures based 'upon probable cause,'" *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (quoting U.S. CONST. amend. IV), such that "[w]arrantless searches and seizures are presumptively unreasonable, subject to certain exceptions," *McKinney*, 980 F.3d at 490 (citing *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)).

An exception applicable here is "that 'officers may briefly detain individuals on the street, even though there is no probable cause to arrest them, if they have a reasonable suspicion that criminal activity is afoot.'" *Id.* (quoting *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing *Terry v. Ohio*, 392 U.S. 1 (1968))). And, "'[a]lthough a mere "hunch" does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (quoting *Prado Navarette v. California*, 572 U.S. 393, 397 (2014); citation omitted).

To justify reasonable suspicion for a detention, an officer, rather than relying on hunches, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. And a court "look[s] at the facts known to the officers at the time," *United States v. Valdes*, 403 F. App'x 885, 889 (5th Cir. 2010) (per

curiam) (footnote omitted), and "at 'the totality of the circumstances' in determining whether an officer had a particularized and objective basis for suspecting criminal activity," *United States v. Reyes*, 963 F.3d 482, 488 (5th Cir. 2020) (quoting *Glover*, 140 S. Ct. at 1191). This "analysis 'is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion.'" *Id.* (quoting *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)).

Reed and Gross possessed reasonable suspicion to detain Williams. Starting with the 911 call, the caller relayed that a trespasser, identified as still present on the scene and in a black vehicle, possessed and drew a knife, and the caller provided an address and his first and last name and phone number and remained on the call until Reed and Gross arrived. *See* Dkt. Nos. 13, 17.

This was "[a] good starting point" – a solid foundation on which to base reasonable suspicion to justify a detention. *United States v. Vickers*, 540 F.3d 356, 360 (5th Cir. 2008) ("The question of whether a 911 call has a sufficient indicia of reliability to provide reasonable suspicion to justify a stop is evaluated based on the circumstances of each case. A good starting point is the presumption of 'the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly when the caller identifies' who he or she is." (quoting *United States v. Drake*, 456 F.3d 771, 775 (7th Cir. 2006); citing *United States v. Burbridge*, 252 F.3d 775, 778-79 (5th Cir. 2001) ("[W]hen an average citizen tenders information to the police, the police should be permitted to assume

that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.")).

After Reed approached him in a parked black vehicle on the scene, Williams initially refused to provide identification after being told he was not under arrest but was being detained. William's refusal was not a violation of Texas law. *See* TEX. PENAL CODE § 38.02(a). But "[a]sking questions is an essential part of police investigations," so "[i]n the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel*, 542 U.S. at 185 (citing *INS v. Delgado*, 466 U.S. 210, 216 (1984) ("[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.")). Even so, insofar as Williams evaded Reed's request, that influences the reasonable suspicion determination. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion." (collecting cases)).

Through his own evidence, Williams does not contest that he possessed a knife. *See* Dkt. No. 28 at 63-67. And his possession of a knife is corroborated by Reed's body camera video. Once officers opened the car door, Gross spotted and removed a knife from the car door armrest. *See also* Dkt. No. 28 at 37 (Reed's probable cause affidavit from the criminal proceeding against Williams, offered as evidence by Williams: "Upon Contact the driver refused to ID himself while under a lawful detention of a peace Officer. Ward was then told to step out of his vehicle to which he refused. I open the door and the Knife that was later identified as the weapon to the assault by Cory

Watson, the Victim, was sitting on the armrest of the door. The knife was knocked away and the driver was removed from the vehicle and detained in handcuffs.").

Although Williams was handcuffed and detained inside Gross's vehicle while the officers conducted their investigation, such actions did not transform Williams's mere detention at the time into a *de facto* arrest. *See Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022) ("It is 'reasonable to detain a suspect at gunpoint, handcuff [him], and place [him] in a police car' during an investigatory stop." (quoting *United States v. Thomas*, 997 F.3d 603, 615 (5th Cir. 2021))). And the video evidence reflects that both officers investigated the allegations against Williams in an efficient manner. *Cf. Vickers*, 540 F.3d at 361-62 ("Though the police had reasonable suspicion to stop [the defendant], the officers' actions must not exceed the permissible scope of the stop. The question is whether the police 'diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" (citations omitted)).

The facts evident from the video recording further show that Reed and Gross developed probable cause to arrest Williams. "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

"The facts must be known to the officer at the time of the arrest" and "must be

particularized to the arrestee." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted); *see also McLin v. Ard*, 866 F.3d 682, 694 (5th Cir. 2017) ("[P]robable cause is the 'sum total of layers of information and the synthesis of what police have heard, what they know, and what they observed as trained officers.'" (quoting *United States v. Shaw*, 701 F.2d 367, 376 (5th Cir. 1983) (quoting, in turn, *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)))).

Reed's probable cause affidavit (again submitted by Williams as evidence) cites the specific offense of disorderly conduct with a weapon. *See* Dkt. No. 28 at 37; TEX. PENAL CODE § 42.01(a)(8) ("A person commits an offense if he intentionally or knowingly" "displays a firearm or other deadly weapon in a public place in a manner calculated to alarm."). The uncontroverted evidence, giving priority to the video recording, reflects that Reed and Gross were informed that Williams possessed and displayed a knife during his confrontation with Watson. *See, e.g.*, Dkt. No. 28 at 40. And the officers previously removed a knife from Williams's possession. In sum, the officers' synthesis of the information in the record is sufficient to form probable cause that Williams committed a criminal offense.

> 2. The facts from the record giving priority to the video evidence reflect that neither Reed nor Gross used excessive <u>force against Williams</u>.

Williams asserts that his being "rapidly pulled out of [his] car" by the officers amounts to excessive force. *E.g.*, Dkt. No. 27 at 28; *see* Dkt. No. 28 at 67 (¶ 33) ("When

I refused to identify myself, the officers opened my car door. At that point I turned to comply with the instruction to exit the vehicle and placed both of my feet on the street. The officers each grabbed one of my arms and pulled me out of the car. I was not prepared to be pulled in that way, and this pulling caused my recently repaired hernia to begin hurting.").

"The Fourth Amendment creates a "right to be free from excessive force during a seizure."" *Trammell*, 868 F.3d at 339-40 (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); citation omitted). "To prevail on a Section 1983 excessive force claim, 'a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v. Serpas*, 745 F.3d 767, 772 (5th Cir. 2014) (quoting, in turn, *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)); citing *Graham v. Connor*, 490 U.S. 386, 393-97 (1989)).

"[T]he touchstone" of this examination "is simply the reasonableness of the force employed." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022)). Accordingly, "[e]xcessive force claims are necessarily fact-intensive" – "whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Id.* (quoting *Deville*, 567 F.3d at 167 (quoting, in turn, *Graham*, 490 U.S. at 396)).

Specifically, a court should consider

(1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether

he is actively resisting arrest or attempting to evade arrest by flight." "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Trammell*, 868 F.3d at 340 (quoting *Graham*, 490 U.S. at 396); *see also Solis*, 31 F.4th at 983 ("Although not listed in the *Graham* factors, courts also consider the speed with which officers resort to force. This is because 'an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance.'" (citing *Trammell*, 868 F.3d at 342, then quoting *Joseph*, 981 F.3d at 332-33)).

This reasonableness/excessiveness inquiry begins with the injury incurred. "[T]o maintain a claim for excessive force, a plaintiff need not demonstrate a significant injury, but the injury must be more than *de minimis*." *Solis*, 31 F.4th at 981 (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)). Courts in this circuit characterize "the injury requirement as 'a sliding scale, not a hard cutoff,'" consequently "the degree of injury – even if minor – [is] interrelated to the reasonableness and excessiveness of the officer's force." *Id.* (quoting *Buehler*, 27 F.4th at 982).

Under this approach, "'[a]ny force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only.'" *Id.* (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)). So, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.*

at 982 (quoting *Alexander*, 854 F.3d at 309).

The evidence supporting Williams's account of his exiting the vehicle is not necessarily consistent with the incident as depicted on the video recording. Giving deference to that recording, as the law requires, the record does not reflect a constitutionally excessive use of force.

Accepting, for these purposes, that there was an injury and turning to the *Graham* factors, Williams was not cooperative, and the officers took measured and ascending actions that only escalated when Williams resisted. He refused Reed's request to provide identification and to step out of the car and then appears to lock his car door while asking for Reed's supervisor. Gross quickly appeared. And he ordered Williams to open the door and step out. Gross then unlocked and opened the door, and Williams was quickly assisted to his feet without complaint while Gross simultaneously retrieved a knife within Williams's reach. *Cf. Priest v. Grazier*, 860 F. App'x 343, 347 (5th Cir. 2021) (per curiam) ("[W]e have held that qualified immunity protects officers who force noncompliant suspects to the ground for handcuffing. Here, the dash cam video substantiates Grazier's and Fenwick's testimony that Priest did not comply with their repeated instructions to roll down his window, open his door, and get out of his car. In the face of this non-compliance, Grazier and Fenwick did not violate clearly established law by forcing Priest to the ground to handcuff him." (collecting cases)); *Mannis v. Lawson*, 585 F.3d 839, 844 (2009) ("This court has found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was

reaching for a weapon." (collecting cases)).

In sum, as depicted by the video, the officers' actions only escalated in response to Williams's resistance; any use of force – assisting Williams to his feet while he existed the car – was very minor (and brief); and Williams's access to a knife was a threat to the officers' safety. There was therefore no Fourth Amendment violation based on this record.

> 3. Williams also has not shown that either Reed or Gross violated a federal right that was clearly established, which is reason alone to grant their motion for summary <u>judgment.</u>

Williams's properly supported version of the disputed facts from the record giving priority to the video evidence "must also constitute a violation of clearly established law." *Joseph*, 981 F.3d at 330. But he has not satisfied this difficult-to-satisfy, independent prong that a plaintiff must show to rebut qualified immunity.

First, the record fails to show that this case presents "'extreme circumstances' where the constitutional violation is 'obvious.'" *Cope*, 3 F.4th at 206; *see, e.g.*, *Hope v. Pelzer*, 536 U.S. at 734-35, 739-41 (handcuffing a prisoner to a hitching post for seven hours in the sun with little water, while taunting him and refusing to allow him to use the restroom); *Taylor*, 141 S. Ct. at 53 (prison cells containing massive amounts of feces over a six-day period); *see also Joseph*, 981 F.3d at 337-38 (setting out other examples of extreme cases in which the Fifth Circuit found an obvious constitutional violation).

So, because Williams has not carried the admittedly "sky high" burden, to show that analogous case law is not necessary, *Joseph*, 981 F.3d at 338, he may only rebut

qualified immunity's second prong by identifying a case or body of relevant case law in which a public official under circumstances like those here was found to have violated the Constitution. And, contrary to his argument, because the Supreme Court has <u>not</u> "reiterated the principle that 'clearly established' law is to be defined at a high level of generality," Dkt. No. 27, ¶ 103 (citations omitted), Williams's failure to identify "[p]recedent involving similar facts," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam), prevents him from rebutting the officers' entitlement to qualified immunity.

## Recommendation

The Court should grant Defendants Officer Austin Reed and Sergeant Thomas Gross's motion for summary judgment on qualified immunity [Dkt. No. 12] and dismiss the claims against them with prejudice, and the Court should grant Defendant Johnson County, Texas's motion to dismiss [Dkt. No. 20] without prejudice to Plaintiff Ward Sturgis Williams's ability to file an amended complaint to the extent that he can assert facts to plausibly show that a municipal policy was the moving force behind the constitutional violations that he alleges against the County.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

- 34 -

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 31, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE